UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **PAMELA ANN PICHEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 2:15-cv-00037** |
| | ) | **Judge Sharp** |
| **v.** | ) | |
| | ) | |
| **CAROLYN W. COLVIN** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the Court is Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 16). The motion has been fully briefed by the parties.

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance under Title II and Supplemental Security Income ("SSI"), as provided by the Social Security Act ("the Act"). Upon review of the administrative record as a whole and consideration of the parties' filings, the Court finds that the Commissioner's determination that Plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g). Plaintiff's motion will be denied.

## I. INTRODUCTION

Plaintiff filed a Title II application for disability insurance and a Title XVI application for Supplemental Security Income on November 23, 2011, alleging disability as of September 24, 2011. (Tr. 151-161). The claims were denied at the initial level on March 6, 2012 and on reconsideration on May 1, 2012. (Tr. 89-96, 102-109). Thereafter, Plaintiff filed a written

Request for Hearing on June 8, 2012. (Tr. 110-111). A video hearing was held on October 1, 2013. (Tr. 16). On March 4, 2014, the Administrative Law Judge issued a decision finding that Plaintiff was not disabled. (Tr. 13-31). Plaintiff filed a Request for Review of Hearing Decision on April 19, 2014. (Tr. 12). The Appeals Council denied her request for review on June 9, 2015. (Tr. 1-4). *See* (Docket Entry No. 17 at 1). This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on March 4, 2014. (AR p. 13). Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity, since September 24, 2011, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease and degenerative joint disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day except that the claimant can perform unlimited pushing/pulling (including hand and foot controls) within external limitations. She can frequently climb, kneel, crouch, and crawl. The claimant can occasionally perform balancing and stooping. She has no manipulative, visual, communicative, or environmental limitations.

6. The claimant is capable of performing past relevant work as a waitress and cleaner. This work does not require the performance work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 24, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR pp. 18-25).

## III. REVIEW OF THE RECORD

The following summary of the evidence of record is taken from Plaintiff's brief, Docket Entry No. 17 at pp. 2, 10).

> Pamela Pichey is a 42 year old woman with a 12th grade education. (Tr. 44). She became unable to work on September 24, 2011 because of the following severe impairments: back pain, migraines, anxiety, knee problems, and heart problems. Ms. Pichey worked as a cook, house cleaner, factory laborer, and in a restaurant. (Tr. 44). She stopped working in 2008 due to her combined impairments.

> ***

> Pamela Pichey testified that she last worked in 2009 as a housekeeper. She had to stop working due to back pain. She had been diagnosed with scoliosis, disc issues, fluid on the knees bilaterally, right elbow pain and migraines. She had trouble standing more than 30 minutes at a time and had to use a cane to ambulate. She rated her pain a 6 of 10. Medications were used to ease her pain. She spends her days lying down, doing housework, watching television and reading. (Tr. 46-58).

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made any legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court must examine the entire record to determine if the Commissioner's findings are supported by substantial evidence. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing her entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d) (1)(A). The asserted impairment(s) must be demonstrated by medically

acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are of sufficient severity as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 CFR §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of

disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 CFR § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In order to rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667

F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315

(1983) (upholding the validity of the medical-vocational guidelines grid as a means for the

Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's

impairments prevent the claimant from doing past relevant work, if other work exists in

significant numbers in the national economy that the claimant can perform, the claimant is not

disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v.*

*Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of*

*Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966,

969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the five-step sequential

evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v.*

*Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the

evaluative process is appropriate in some circumstances).

**C. Plaintiff's Assertion of Error**

Plaintiff argues that the ALJ erred (1) in the weight given to all treating and examining

providers and (2) in his evaluation of Plaintiff's pain. Plaintiff contends that the Commissioner's

decision should be reversed and/or remanded for review.  (Docket Entry No. 17 at pp. 15-16).

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the
> record, a judgment affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without remanding the cause for a
> rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the

[Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision

is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and

evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Additionally, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's assertion of error is addressed below.

*1. The ALJ erred in the weight given to all treating and examining providers.*

Plaintiff argues that the ALJ gave little weight to the opinions of "Dr. [Dennis] Dingle, [Plaintiff's] treating physician[;] Dr. Melvin Blevins, DDS consultative physician[;] Ms. Amy Evans, [Plaintiff's] treating nurse practitioner[;] and Dr. Brian Peterson [Plaintiff's] treating orthopedist." (Docket Entry No. 17 at 10). The reports of these providers "are consistent and [] are not contradicted in the record by anyone other than a reviewing physician." (*Id*. at 11). In support, Plaintiff makes the following arguments:

> Dr. Peterson's opinion is sufficiently supported by medical findings, and the Administrative Law Judge erred in only giving the opinion some weight but found it over expansive in light of the minimal physical findings. (Tr. 23). However, Dr. Peterson's record contains objective evidence to support his opinion. His examination of her left knee found it to be tender to palpation over the medial and lateral joint lines, more so over the medial up to the femoral condyle. She had equivocal McMurray. Her right knee was also tender to palpation along the medial joint line and mildly over the lateral. Crepitus was felt. She was stable to varus and valgus stressing. Both of her knees had range of motion from approximately 5° up to 110°. Three views of the left knee revealed no acute bony pathology. There was mild joint space narrowing medially. Three views of the right knee revealed no acute bony pathology. MRI was recommended for further evaluation. She was diagnosed with bilateral knee osteoarthritis. Conservative management would be exhausted prior to total knee replacement. Cortisone injections anti-inflammatory medications, TENS unit, physical therapy, and weight loss, etc. were recommended. (Tr. 407-412, 420-421).
>
> Dr. Peterson's opinion is supported by the report of Joe Lindahl. MRI dated April 6, 2011 revealed no evidence of internal derangement, minimal effusion, mild degenerative changes of the medial compartment, and mild marrow edema of the tibial eminence possibly reflecting contusion. MRI was reviewed by phone and cortical steroid injections had provided her with significant relief. The potential

for viscosupplementation was discussed. (Tr. 293-294). Joseph Lindahl, PA-C noted that corticosteroid injections provided her with significant relief, (Tr. 295).

Dr. Peterson has had a relationship with his patient and as cited above has noted her tenderness and crepitus in her knees throughout his treatment records. Dr. Peterson's assessment is consistent with the medical evidence and with Ms. Pichey's hearing testimony. The Administrative Law Judge erred in rejecting Dr. Peterson's opinion.

Dr. Melvin Blevins, disability examiner for Social Security, also gave an opinion that restricted Ms. Pichey from work. Dr. Blevins had an extensive examination and review of MS. Pichey's records.

Although a nurse practitioner's opinion is not to be given controlling weight, the opinion must be sufficiently considered. (Tr. 440-444). Ms. Amy Evans treated Ms. Pichey along with Dr. Denise Dingle. Both Dr. Dingle and Ms. Evans gave Ms. Pichey similar restrictions. (Tr. 340-343, 440-443).

The ALJ's reasons for rejecting all of these treating and examining providers' assessments is not sufficient.

(*Id*. at pp. 11-12). Defendant counters that the ALJ properly weighed the medical opinions in the record in evaluating Plaintiff's credibility and RFC. (Docket Entry No. 18 at 5). Here, the ALJ found the following regarding Plaintiff's RFC:

. . . the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day except that the claimant can perform unlimited pushing/pulling (including hand and foot controls) within external limitations. She can frequently climb, kneel, crouch, and crawl. The claimant can occasionally perform balancing and stooping. She has no manipulative, visual, communicative, or environmental limitations.

(AR at p. 20). The ALJ concluded that Plaintiff could perform work as a waitress and cleaner (*Id*. at 24). Consequently, the ALJ found that Plaintiff was not disabled.

In making the decision, the ALJ relied on medical opinions, Plaintiff's medical treatment, and the medical evidence (Tr. 22-24). In November 2011, Denise Dingle, M.D., provided an opinion that Plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently,

stand/walk for 2 hours, and sit for 4 hours (Tr. 23, 340-43). Plaintiff could never perform postural activities and had environmental restrictions (Tr. 342-43). In February 2012, Melvin Blevins, M.D., performed a consultative examination and opined that Plaintiff could lift less than 20 pounds occasionally, stand for less than 2 hours, and sit for less than 4 hours (Tr. 24, 352-59). In July 2012, Amy Evans, F.N.P., provided an opinion identical to Dr. Dingle's opinion (Tr. 23-24, 440-43). The same month, Brian Peterson, D.O., opined that Plaintiff could lift 20 pounds occasionally and less than 10 pounds frequently, stand/walk for 2 hours, and sit for less than 6 hours (Tr. 22-23, 423). Plaintiff could frequently balance and occasionally climb, kneel, crouch, and crawl (Tr. 425). After the consultative examination, Roslynn Webb, M.D., a state agency medical consultant, reviewed the medical records and found that Plaintiff could perform a range of light work (Tr. 24, 371-79). Dr. Webb evaluated Dr. Blevins' opinion and found it based on Plaintiff's subjective complaints and an incomplete review of the medical records (Tr. 377). In April 2012, Joseph Curtsinger, M.D., reviewed the medical records and affirmed Dr. Webb's opinion that Plaintiff could perform a range of light work (Tr. 413).

The ALJ accepted Dr. Peterson's occasional lifting restriction and opinion that Plaintiff had no manipulative or environmental restrictions (Tr. 20, 22-23, 423, 425-26). The ALJ found that some of the opinion was overly expansive and exceeded the minimal objective abnormalities (Tr. 22-23). Contrary to Dr. Peterson's assertion that Plaintiff suffered from "severe" osteoarthritis, the x-rays and MRIs show that Plaintiff had "mild" and "minimal" degenerative changes (Tr. 258, 294, 304, 311, 411-12, 424, 454, 469, 573-74). The "mild" findings did not support Dr. Peterson's limitations, but are instead consistent with the RFC of light work (Tr. 20). The ALJ found Dr. Blevins' extreme limitations conclusory (Tr. 24, 357). While the doctor provided significant limitations, he gave no explanation for the limitations or tied them to

Plaintiff's objective findings (Tr. 357). Further, the ALJ found the limitations based largely on

Plaintiff's subjective allegations (Tr. 24). The ALJ also evaluated Dr. Dingle's and Ms. Evans'

opinions and found them entitled to little weight (Tr. 23-24, 340-43). The ALJ noted that Dr.

Dingle was Plaintiff's treating physician (Tr. 23). *See* 20 C.F.R. §§ 404.1527(c)(1)-(2),

416.927(c)(1)-(2). However, the ALJ found the opinions inconsistent with the record (Tr. 23-

24). Further, the suggestion that Plaintiff must avoid smoke was inconsistent with her continued

smoking (Tr. 23, 343). The ALJ found that this restriction placed the entire opinion in doubt (Tr.

23-24).

It is the function of the ALJ to resolve the conflicts between the medical opinions.

*Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts,

the agency decides who wins. The fact that Justice now disagrees with the ALJ's decision does

not mean that the decision is unsupported by substantial evidence."). Under SSR 96-7p, the ALJ

is permitted to "consider his or her own recorded observations of the individual as part of the

overall evaluation of the credibility of the individual's statements." *See* SSR 96-7p; *Blankenship*

*v. Comm'r of Soc. Sec.*, No. 14-2464, 2015 WL 5040223, at \*10 (6th Cir. Aug. 26, 2015)

(treating doctor's assertion that claimant was unable to walk from the parking lot to work was

"seemingly contradicted by the fact that Blankenship was able to walk unassisted from her car to

the room where the hearing was being held.").[1] The ALJ may rely on opinions from consulting

doctors. *See Brown v. Comm'r of Soc. Sec.*, No. 14-1626, 2015 WL 163059, at \*1 (6th Cir. Jan.

13, 2015) ("The ALJ gave 'some weight' to the opinions of three consulting physicians…").

While all medical opinions are evaluated as discussed in 20 C.F.R. § 404.1527, opinions by

---

[1] As stated *infra*, the ALJ also found Plaintiff's allegations not supported by the medical evidence
(Tr. 20-24). *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (quoting 20
C.F.R. § 404.1529); Rudd, 531 F. App'x at 726-27 (citations omitted).

consulting or non-treating doctors need not be evaluated in accordance with the treating physician rules outlined by the Sixth Circuit. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527 and *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The record reflects that the ALJ not did reject the opinions of Dr. Dingle, Dr. Blevins, Ms. Evans, nor Dr. Peterson; rather, he gave partial weight to the opinions – while also giving some weight to the State agency medical consultants. The Court finds that the ALJ demonstrated proper consideration of the competing opinions. Moreover, the record indicates that the ALJ considered other factors, such as Plaintiff's allegations to the extent they were found credible and her retained level of functioning as reflected by the evidence, as well as the medical evidence. Accordingly, the Court finds that substantial evidence supports the ALJ's determination as to Plaintiff's residual functional capacity.

*2. The ALJ erred in his evaluation of Plaintiff's pain.*

Plaintiff asserts that the ALJ erred in evaluating the limiting effects of her pain. (Docket Entry No. 17 at 13). Specifically, Plaintiff argues that she has objective conditions that cause her pain, and the ALJ erred in rejecting her complaints of pain. (*Id.* at 14). In support, she asserts the following:

> On August 6, 2012, Ms. Pichey was seen at Pain Management Group complaining of headache, mid back pain, lower back pain and right toes. Her pain was constant, relieved by lying down, rest and medication, and worse with standing, walking and bending. Her pain was sharp, burning and shooting. Without medications, her pain was a 9 of 10. With medications, her pain was a 4 of 10. Her medications included Neurontin, Percocet, Verapamil, Xanax, Estradiol, Flonase, and Mobic. (440-447).
>
> At her hearing, Ms. Pichey testified she had trouble standing more than 30 minutes at a time and had to use a cane to ambulate. She rated her pain a 6 of 10. Medications were used to ease her pain. She spends her days lying down, doing housework, watching television and reading. (Tr. 46-58).

There is objective evidence of an underlying condition. Ms. Pichey has conditions that can cause the pain that she complained of. White County Hospital X-rays revealed mild degenerative changes throughout the mid and lower thoracic segments with marginal spurring and mild degenerative changes more marked at L3-4 with marginal spurring. (Tr. 296-298). As discussed above, Dr. Peterson found Ms. Pichey to have findings of significant degenerative joint disease.

(*Id*. at pp. 13-15).

Defendant counters that contrary to Plaintiff's argument, the ALJ properly determined that Plaintiff's allegations regarding her limitations were not totally credible. (Docket Entry No. 18 at 4). The ALJ found the following with respect the Plaintiff's alleged pain and credibility:

At her hearing, the claimant was visibly obese on presentation but entered and exited the hearing room with no visible or observable difficulty, and she sat through her hearing without any signs of discomfort.

\*\*\*

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

While the claimant has received medical treatment since [the] alleged onset date, the medical evidence of record does not reflect any objective abnormalities to suggest that she is incapable of performing the above residual functional capacity assessment.

\*\*\*

[Dr. Brian Peterson's] mild findings [regarding claimant's knees] are inconsistent with the claimant's allegation that she has been told she needs a bilateral knee replacement [].

\*\*\*

In sum, the above residual functional capacity is supported by the medical evidence of record, which indicates the presence of degenerative joint disease and degenerative disc disease. While these could be expected to cause some limitations, they do not cause the level of limitations alleged by the claimant.

(AR at pp. 20-24).

The evaluation of Plaintiff's alleged symptoms rests with the ALJ, and "[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Admin.*, 693 F.3d 709, 713–14 (6th Cir. 2012). The ALJ may consider daily activities as one factor in the evaluation of subjective complaints. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("Further, the ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."); 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p.

Here, the ALJ's evaluation Plaintiff as contemplated in SSA regulations, is supported by substantial evidence in the record. Consequently, the ALJ's decision is conclusive and must be affirmed. *Warner v. Comm. Of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

## V. CONCLUSION

In sum, the Court concludes that the findings of the ALJ are supported by substantial evidence on the record as a whole, and are free from legal error. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *E.g., Longworth c. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

For all of the reasons stated, the Court will deny Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 16).

An appropriate Order shall be entered.

_____

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE